### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PPC BROADBAND, INC., </br></br> Plaintiff, </br></br> v. </br></br> CHARLES INDUSTRIES, LLC and AMPHENOL CORPORATION, </br></br> Defendants. | C.A. No. _____ </br></br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff PPC Broadband, Inc. ("PPC"), by and through its undersigned counsel, hereby files the following Complaint for patent infringement against defendants Charles Industries, LLC ("Charles") and Amphenol Corporation ("Amphenol") (collectively the "Defendants"), and alleges as follows:

## NATURE OF ACTION

1. This action for patent infringement, brought under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, seeks relief arising out of Defendants' infringement of U.S. Patent No. 9,008,483 (the "'483 Patent") (the "Patent-in-Suit"). The Patent-in-Suit is attached hereto as Exhibit A.

2. PPC asserts infringement of the Patent-in-Suit against Defendants for their unauthorized making, using, offering to sell, selling, and/or importing of fiber enclosure products, including but not limited to its CFIT-Flex™ Series of fiber enclosures (hereinafter and collectively the "Accused Products").

## THE PARTIES

3. PPC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 6176 East Molloy Road, East Syracuse, New York.

4. Upon information and belief, Amphenol is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 358 Hall Avenue, Wallingford, Connecticut.

5. Upon information and belief, Charles is a limited liability company organized and existing under the laws of the State of Illinois, with its principal place of business at 1450 American Lane, 20th Floor, Schaumburg, Illinois.

6. Upon information and belief, Charles is a wholly owned subsidiary of Amphenol.

7. Upon information and belief, Amphenol is a member-manager of Charles.

8. Upon information and belief, Amphenol considers Charles to be an Amphenol company that is part of Amphenol's business, specifically part of its broadband business.

9. Upon information and belief, Amphenol manages Charles, and Charles is controlled by Amphenol.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the asserted claims pursuant to 28 U.S.C. §§ 1331 and 1338, and 35 U.S.C. § 281.

11. This Court has personal jurisdiction over Amphenol because Amphenol is a Delaware corporation, because Amphenol has designated an agent in Delaware for service of process, and/or because Amphenol has been conducting and/or is presently conducting business in the District of Delaware on a regular basis.

12. This Court has personal jurisdiction over Charles, consistent with the principles of due process and the Delaware Long-Arm Statute, 10 *Del. C.* § 3104, because Charles regularly conducts business in Delaware, and purposefully avails itself of the privileges of conducting business in Delaware. In particular, Charles, directly and/or through its agents, intermediaries, subsidiaries, and/or members, including Amphenol, makes, uses, imports, offers for sale, sells, and/or advertises its products and affiliated services in Delaware. Through its agents, intermediaries, subsidiaries, and/or members, Charles has placed, and continues to place, infringing products into the stream of commerce via established distribution channels, with the knowledge and/or understanding that such products are sold in Delaware.

13. Upon information and belief, this Court has personal jurisdiction over Charles because Amphenol is a member-manager of Charles, and this Court has personal jurisdiction over Amphenol.

14. In addition, this Court has personal jurisdiction over Defendants because Defendants have knowingly and actively engaged in acts that have infringed and will infringe the claims of the Patents-in-Suit in the District of Delaware.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1400 as to Amphenol because it is incorporated in Delaware, and therefore resides in Delaware for the purposes of the statute.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1400 as to Charles because Amphenol is a member-manager of Charles, Charles resides in the states in which any of its members reside, and at least its member-manager Amphenol resides in Delaware because it is incorporated in Delaware, thus Charles resides in Delaware for the purposes of the statute.

## FACTUAL ALLEGATIONS

### *Background*

17. PPC is a worldwide leader in the design and manufacture of products for the cable and telecommunication industries. PPC invests a substantial amount of capital in product development and improvement to maintain its position as a leading producer of innovative connective technology products. As a result of this investment, PPC has hundreds of issued U.S. Patents, and has an established track record of strictly enforcing its patents against competitors, including against Amphenol.

18. Upon information and belief, both Defendants use, import, offer for sale, and/or sell the Accused Products in Delaware and elsewhere in the United States. Such use, importation, offers for sale, and/or sale the Accused Products is in direct competition with PPC's fiber enclosure products.

### *The '483 Patent*

19. On October 4, 2013, a patent application was filed on the invention of Nicholas B. Larsson, Andrew E. Swienton and George I. Wakileh, U.S. Patent Application Serial No. 14/009,955 (the "'955 Application"), entitled "Optical Fiber Cable Drop Interface Box."

20. On April 14, 2015, the '955 Application resulted in the United States Patent and Trademark Office duly and legally issuing the '483 Patent. The '483 Patent is assigned to PPC.

21. As just one example, Claim 1 in the '483 Patent claims:

A drop interface box configured to be mounted to a structure and to receive a drop cable from an optical fiber service provider distribution point and a plurality of distribution cables which distribute the optical fiber service, the drop interface box comprising:

    a base unit having a drop cable entrance configured to receive the drop cable and having drop cable retaining mechanisms spaced apart and configured to retain a length of drop cable looped around the drop cable retaining mechanisms;

a cover having a hinged connection to the base unit to selectively enclose a storage area provided in the base unit; and

a fiber storage panel having a hinged connection to the base unit on a side opposite the hinged connection of the cover to the base unit such that the fiber storage panel is moveable relative to the base unit and configured to be stored between the base unit and the cover, the fiber storage panel having first spools positioned to store a plurality of feed break-out cables coupleable to the drop cable, the fiber storage panel further having second spools positioned to store a plurality of distribution cables coupleable to the plurality of feed break-out cables.

22. PPC is the sole owner of all right, title, and interest in the '483 Patent, including the right to enforce the '483 Patent and sue for past damages.

23. PPC has not licensed Defendants to practice the '483 Patent, and Defendants have no right or authority to license others to practice the '483 Patent.

24. The '483 Patent identified challenges and problems that arose when attempting to use optical fiber "to provide network access all of the way to the customer premises, and even within the customer premises." ('483 Patent, Col. 1, lines 35-38.)

25. For instance, the desire to use optical fiber cables that are pre-connectorized led "to the need for installers to deal with excess optical fiber cable length in many instances," which led to problems in organization of the drop cables and distribution cables. (*Id.*, Col. 1, lines 50-61.) Further challenges and problems arose when attempting to "protect the optical fiber cables from excessive strain. (*Id.*, Col. 1, lines 61-64.) The '483 Patent addressed some of these challenges and problems by providing a new and innovative drop interface box. For example, Fig. 4-1 of the '483 Patent is set forth below, illustrating one embodiment of a drop interface box that includes a base unit, a cover and a fiber storage panel.



Fig. 4-1

**The Accused Products**

26. The Accused Products are a line of fiber enclosures that include, without limitation, the CFIT-Flex™ Series of fiber enclosures.

27. The Accused Products are described as universal enclosures in the Defendants' marketing materials and on their websites. *See* Exhibit B, *CFIT-Flex™ Compact Universal Enclosure Datasheet*; Exhibit C, *Charles Advertorial*; Exhibit D, https://www.charlesindustries.com/product/compact-universal-enclosures-cfit-flex; and Exhibit E, https://www.amphenol.com/markets/broadband?search=enclosure.

28. For example, Defendants' CFIT-Flex™ Compact Universal Enclosure, depicted below, is a drop interface box that includes a base unit, a cover and a fiber storage panel.



*Defendants' Knowledge of the Patent-in-Suit*

29.     The parties are competitors in the field of telecommunications and cable products generally, and fiber enclosures specifically.  The parties are familiar with one another as they are engaged in active litigation in this District and active proceedings before the United States Patent and Trademark Office.  Upon information and belief, Defendants are sophisticated entities that have established business processes for monitoring their competitors, including PPC, and the patents of their competitors, including patents owned by PPC.  Upon information and belief, Defendants have established business processes for conducting freedom to operate investigations as part of designing, developing, and/or commercializing their products.  Upon information and belief, Defendants would have conducted such an investigation in conjunction with the commercialization of the Accused Products.  As such, it is reasonable to infer that Defendants were aware of the Patent-in-Suit at least as early as the design, development and/or commercialization of the Accused Products, or that Defendants were willfully blind to the Patent-in-Suit.

30. On October 21, 2022 (the "Notice Date"), a letter was sent to Craig A. Lampo of Charles, with a copy to Robert Branham of Amphenol (the "Notice Letter"), notifying Defendants of the infringement of the Patent-in-Suit by the Accused Products. *See* Exhibit F. The Notice Letter included a detailed claim chart demonstrating the infringement of at least Claims 1, 2, and 10-13 of the Patent-in-Suit.

31. In light of the Notice Letter, at least as early as the Notice Date, Defendants knew or should have known that its manufacture, use, importation, offer for sale, and/or sale of the Accused Products infringed the Patent-in-Suit.

## COUNT I
### (*Infringement of the '483 Patent*)

32. PPC repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

33. Defendants have directly infringed and continue to directly infringe at least Claims 1, 2, and 10-13 of the '483 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by using, selling, offering for sale, and/or importing the Accused Products in the United States, without license or authorization by PPC.

34. As set forth in the claim chart attached as Exhibit G, which is incorporated herein by reference, and without limitation, the Accused Products include each of the elements of at least Claims 1, 2, and 10-13 of the '483 Patent, either literally or under the doctrine of equivalents, and Defendants' manufacture, importation, use, offer for sale, and/or sale of the Accused Products in the United States constitutes infringement of the '483 Patent.

35. Defendants also have been active inducers of infringement of the '483 Patent under 35 U.S.C. § 271(b), because, on information and belief, Defendants aided, instructed, or otherwise acted with the intent to cause acts by its customers and/or users of the Accused Products, including

in combination with cables obtained from Defendants and/or other vendors, that would constitute direct infringement of the patent, including instructing that the Accused Products be used with a drop cable and distribution cables, Defendants knew of the patent at least as early as the Notice Date, showed willful blindness to the existence of the patent before that date, and/or knew at least as early as the Notice Date, or showed willful blindness before that date, that the actions of its customers and/or users of the Accused Products would infringe at least Claims 1, 2, and 10-13 of the '483 Patent, and its customers and/or users of the Accused Products directly infringed at least Claims 1, 2, and 10-13 of the '483 Patent as set forth in Exhibit G.

36.     Defendants also have been contributory infringers of the '483 Patent under 35 U.S.C. § 271(c), because, on information and belief, Defendants' customers and/or users for/of the Accused Products have directly infringed at least Claims 1, 2, and 10-13 of the '483 Patent, Defendants sold, offered for sale, or imported within the United States a component of the Accused Products, the Accused Products are not a staple article or commodity of commerce capable of substantial non-infringing use at least because the Accused Products must be used with cables to be functional, the Accused Products constitute a material part of the claimed invention, at least as early as the Notice Date Defendants knew that the Accused Products were especially made or adapted for use as an infringement of one or more claims of the '483 Patent, including without limitation Claims 1, 2, and 10-13, and Defendants' customers and/or users use the Accused Products in combination with cables obtained from Defendants and/or other vendors to directly infringe one or more claims of the '483 Patent, including without limitation Claims 1, 2, and 10-13 as set forth in Exhibit G.

37.     Defendants' infringement has caused and continues to cause PPC irreparable harm and damages in an amount to be proven at trial.

38. Upon information and belief, the Defendants' unlawful infringing activity will continue unless and until the Defendants are enjoined by this Court from further infringement, and, at least since the Notice Date, such infringement has been willful, deliberate, and intentional. The Defendants' continuing infringement since the commencement of this suit will cause PPC further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, PPC prays for judgment in its favor and against Defendants, collectively and individually, as follows:

A. Entry of judgment that Defendants have infringed one or more claims of the '483 Patent;

B. Entry of judgment that preliminarily and/or permanently enjoins Defendants and their representatives, assigns or successors, or any subsidiaries, parents, divisions, agents, servants, employees thereof, and/or those in privity with Defendants from infringing the '483 Patent;

C. An award of compensatory damages for PPC as a result of infringement, as provided in 35 U.S.C. § 284, the extent of which will be determined at trial, but in no event less than a reasonable royalty, together with interest and costs;

D. A determination that Defendants' acts of infringement of one or more claims of the '483 Patent have been, and continue to be, egregious and/or willful, and that PPC is entitled to an award of enhanced damages of up to three times the amount of actual damages pursuant to 35 U.S.C. § 284;

E. A determination that, pursuant to 35 U.S.C. § 285, this is an exceptional case and that PPC be awarded its reasonable attorney's fees;

F. An award of pre-judgment and post-judgment interest on any judgment rendered in this action;

G. An award of PPC's costs in this action; and

H. Such other and further relief as is just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) and District of Delaware Local Rule 38.1, PPC demands a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: November 21, 2022 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| *Of Counsel:* | /s/ *Pilar G. Kraman* |
| BARCLAY DAMON LLP | Pilar G. Kraman (No. 5199)<br>Robert M. Vrana (No. 5666)<br>Alexis N. Stombaugh (No. 6702) |
| Douglas J. Nash<br>John D. Cook<br>Genevieve M. Halpenny (#6738)<br>Barclay Damon Tower<br>125 East Jefferson Street<br>Syracuse, New York 13202<br>(315) 425-2700<br>dnash@barclaydamon.com<br>jcook@barclaydamon.com<br>ghalpenny@barclaydamon.com | Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>(302) 571-6600<br>pkraman@ycst.com<br>rvrana@ycst.com<br>astombaugh@ycst.com |
| | *Attorneys for PPC Broadband, Inc.* |
| Naresh K. Kannan<br>80 State Street<br>Albany, New York 12207<br>(518) 429-4200<br>nkannan@barclaydamon.com | |